Good morning. Mitch Tilner for Appellant Travelers, and I'm hoping to reserve five minutes for rebuttal. The issue before the Court, which the Court reviews de novo, is whether Travelers had a duty to defend Taylor against the original Rosequist complaint. To answer that issue, the Court should ask and answer two questions. First, what did the policy cover? And second, what did Rosequist allege in her original complaint? Turning first to the policy, it covered oral, written, or electronic publication of material that disparages another's goods. Note that the coverage applies only to publications, which this Court and others have said means statements, whether oral, written, or electronic, statements that disparage another's goods. Coverage does not extend to conduct or acts that may damage the reputation of another's goods. Just so I have the, or the panel has the stream of this correct, you correct me if I'm wrong. When the suit was first filed, or demand was first made, there was a count in the complaint for trade dress infringement. Is that correct? That's correct. And the defense of the demand or the defense of the suit was tendered to Travelers. And Travelers pointed out that while there had been trade dress coverage in a prior policy, that had been removed. Am I right so far? With a slight correction. The trade dress coverage had never been in a prior policy. The policy as issued did not cover trade dress infringement by virtue of the endorsement to the policy as issued. Then let me state it perhaps more neutrally. When the claim was first tendered to Travelers, Michael Taylor described it as trade dress infringement. This is what we're being sued for. That is correct. And you looked at the policy and said, doesn't to us look like it covered? We, Travelers, refuses. That's correct. Then the complaint was amended. Yes. And it contained a different claim. Trade libel. Trade libel. Trade libel. That's correct. And there were new allegations. That was tendered to you and you accepted. That's correct. And so what we're here about is between first demand and acceptance of second. Correct? That is correct. I'm clear. That is correct. The first complaint alleged two causes of action. One for trade dress infringement and one for breach of contract. They tendered the defense based on the cause of action for trade dress infringement. That's how they described the complaint. That's what they tendered. Travelers looked at the policy and determined the policy does not cover trade dress infringement. So it denied the defense. A year and a half later, when the complaint was amended to include new factual allegations about disparaging statements made by tailor personnel, Travelers then agreed, okay, now we've got a product disparagement case. We've got an allegation of a statement by the insured that disparages another's goods. That is potentially covered and we will defend. How do you get around Charlotte Roos? In Charlotte Roos, well, now there's a split in California on the question whether this particular policy language requires a pleading of trade libel, which is also known as product disparagement. Charlotte Roos said, no, you don't have to plead all the elements. Other California appellate courts have said, yes, you do. The way we can kind of bypass that problem is to look at the policy language itself. Didn't Charlotte Roos involve this very language? Charlotte Roos, yes, involved this language and it said, this language does not require you to plead all the elements of trade libel. That's true. And so-  Maybe it doesn't have to include all the elements of the tort of trade libel. But the policy language very clearly covers publications that disparage. And this court and many others have said that means the complaint must allege a disparaging statement by the insured. I'm sorry, and that it can be done by implication, or that it can be accomplished by implication. Isn't that what Charlotte Roos goes on to say? If there's a statement alleged, and the statement implies the identity or goods of another person. Yes, that can be a disparaging statement. But first, there must be a statement alleged in the complaint. Once there's a statement alleged, then the parties can debate whether the disparagement is implied or expressed in the statement. What makes this case different is that the complaint against the insured did not allege a statement. Let's talk about that. You argue in your opening brief at page 32 that the word steer in paragraph 27 of Rosequist's complaint does not imply Taylor's showroom salesman made any statements to their customers. But only that those salesmen directed or guided customers to Taylor's goods. But since salesmen seems like normally make statements when they direct or guide customers towards particular goods, my question for you, isn't it fair to read the complaint as alleging Taylor's showroom salesmen were making statements about the furniture to its customers? And is that not enough? A number of responses to that point. Obviously, that paragraph is the key to the district court's rationale. It's the argument that they advance on appeal. Paragraph 27 of the original complaint. My first point is, that paragraph does not allege steering occurred in the showroom. That paragraph alleges there was a risk by virtue of the photographs that the design community, there was a risk that customers would visit the showroom. And be unknowingly steered to the knockoffs. So, point one, there's no allegation of actual steering. There's an allegation of a risk. And the reason that allegation- Well, so when Rosequist's complaint alleges customers were steered to cheap, I think they used the word, to cheap imitation knockoffs. Does that imply that the salesman made statements about the low price of the wicker, wicker, wicker furniture? Well, your honor, the allegation of paragraph 27 is that the photographs, quote, compounding, compounded or compounding the high risk. That customers will visit Taylor looking for wicker's furniture only to be unknowingly steered instead to cheap imitation knockoffs. So the allegation is there's a risk here and a likelihood of confusion. That's an allegation you need when you plead trade dress infringement. An essential element of trade dress infringement is likelihood of confusion, not actual confusion. But in another, I guess another part of the complaint alleges those customers believe they were viewing and being sold actual wicker, wicker, wicker furniture. Wouldn't those customers have understood any statements by those salesmen to have been statements about the wicker, wicker, wicker furniture? Your honor, the problem is there's no statement alleged. I invite the court to read the complaint again with this question in mind. What did the salespeople say about Rosequist Furniture? But doesn't Charlotte Roos say it can be done by implication? When you have a statement by the insured that implies the identity of a third party's goods. Yes, that can be disparagement by implication. But you have to have a statement to begin with before you can apply the implied disparagement doctrine. Do you have Charlotte Roos with you? I don't believe I have Charlotte Roos. Well, I'm going to paraphrase, and I'll cite the page. It's at page 979 of the opinion. I'm sort of paraphrasing. The court pointed out that even if travelers believed the sufficiency of  the goods, it would still have a duty to defend, at which point it could point out a good defense, by paraphrasing page 979 of the opinion. That's pretty strong language. In Charlotte Roos, there was an allegation that the insured made a statement about the goods. They had price tags on the goods. And the allegation was that price publication disparages our high-end premium goods. So there was a statement by the insured that allegedly disparaged the plaintiff's goods. What I take the California Court of Appeal to be saying with this, and this is a little foreign to me because this would be different if we were in Arizona. It'd be a different case entirely. But what it seems they're saying is, you get a complaint tendered to you, and it's not enough to say, we think that that's not covered. You have to sort of imagine what could have been said. And if that falls within the policy, you've got to step in and defend. Your Honor- It's pretty tough language. California law is to the contrary. In California, you don't have to speculate what could have been alleged. You don't speculate about other facts that the plaintiff may know and may one day allege in the amended complaint, for example. You don't speculate about that. You read the facts that are pleaded. And this court has said, in Microtech, for example, where there's no statement alleged against the insured, it can't be disparagement coverage. It could be something else, could be trade dress infringement. But we don't speculate that maybe when they amend the complaint in 18 months, they're going to throw in a disparaging statement. You can't speculate. Did you want to reserve? I will, yes. Thank you. May it please the court, David Gauntlet for the appellee, Michael Taylor Designs. You're absolutely correct about Charlotte Bruce. Review was denied September 26, 2012. Travelers vociferously argued in the briefing on the petition for review the points that you've just heard and they were rejected in not permitting review. They were rejected in not permitting your hearing. As you know, a published decision of the Court of Appeals on California law governs here. Your opponent suggests that other divisions, if I have the term correct, of the California Court of Appeal have come out the other way, is that right? That's not true. In fact, if you look carefully at the record, the Hudson case from this court in 2010 quoted CNA, a California Court of Appeal decision, saying pursuant to Scottsdale, a Supreme Court case, and Barnett, a Court of Appeal case, also published. It was also not necessary for claimants to have pled all the elements of defamation to trigger defendant's duty to defend. And indeed, a case we cited to this court in a 28-J letter, Careers Systems Development Co, made the same point in 2011 after the briefing in this case. And that's referenced in our 28-J letter. What is missing from the colloquy of opposing counsel is reference to the Supreme Court of California decision, Scottsdale v. MV Transportation in 2005. He finds what we would describe as an inference always to be speculation. Well, the district judge disagreed on our facts. And what the court in Scottsdale said is a duty to defend arises where under the facts alleged, reasonably inferable or otherwise known, the complaint could be fairly amended to state a covered liability. Judge Seaborg and Michael Taylor at 912 said the only factual change of any note in the amended complaint was the expansion of the somewhat vague term steered into sales employees, orally told potential customers. Making this point explicit rather than implicit, however, does not represent a distinction of significant import. Former Chief Judge Patel and Fossil Inc, the fireman's fund, which we cited to the court, made the same point about fact allegations of trade dress in an original complaint that were then clarified in a subsequent pleading. And the court specifically noted that there was just more factual detail, but the nature of the trade dress count was sufficient initially to show a defense. Same ruling was made in Jayco, a case we handled in Seattle. Under Washington law, looking at the same principle. The notion is they never in their brief talk about inferences. I'd invite the court to look at all the cases they do not address at all that I raised in my appellee's brief and their reply despite having some 3,000 words they felt unnecessary to use. All the cases we distinguish that they purport to have different view rulings on the scope of trade libel that they do not counter. It's an amazingly tight, well drafted, but very succinct reply without a lot of rebuttal. Travelers has known that it's got a problem in this area since 1997. In the PZB, Petronix case, when the argument that trade libel is the sole possible meaning of the same offense language was rejected under New York law. And the court said, no, you look at a lay person's understanding of the language, which encompasses to degrade or depreciate by indirect means. A derogatory comparison of one thing with another that doesn't have to even involve a statement explicitly. It can, as here, by inference, say an implicit statement. They would have you fantasize that sales people who make a living on commission don't talk to customers when they show them furniture. I beg to differ.  They also do exactly what Judge Bauer attacked in the Acme case, the Seventh Circuit, reversing the district court because the insurer and the district court had too narrowly looked at the fact allegations to evidence implicit disparagement. If you look here at the full record of allegations, you'll find the following. At paragraph one, MTD is now proceeding to market copies of Rosequit's designs, even referring to the imitation knockoffs with the same descriptive names that Rosequit created, and has used for the last three decades. Incorporates also the allegations of what was stated by Michael Taylor in Exhibit C, which is part of the record under FRCP 10C, as if it was part of the complaint and pled as such. That state, in the next few weeks, MTD will introduce a new collection of outdoor furniture. Press release is now being distributed. So there were publications that made the statements that suggested not only are furniture advertised, the cheap synthetic knockoffs, in tandem with, in addition to the depictions of the wicker, wicker, wicker furniture. What occasion the amendment of the complaint? There was a mediation, and it became clear that the carrier's non-participation was an issue. So clarification of the pleadings to address facts that had not been clearly stated to address those issues arose. Plaintiffs decided that they needed to be more articulate and clear about those issues. But the original complaint for Lanham Act violations included trade dress, but was not necessarily so limited. They also talked about trademark dilution based on tarnishment. There's two kinds of dilution for trademarks, blurring, tarnishment. Tarnishment allegations dovetail with, are similar to, and involve the same analytic approaches as degrading for disparagement purposes. Do I infer from your description that there was a mediation and- It's not in the record, your honor, so I don't want to go too far into that. I just wanted to point that out. Well, is it wrong to infer that there was a mediation and the claimant, the plaintiff, was informed about the insurance company's decision? Well, under Rule 26, you have to have production of information about the carrier's position. And so they were advised of a denial letter. So they had that in hand and they understood it. Is there anything in the world wrong with that? No, but they were apprised of that and they may have realized that if they wanted to ensure participation, it would be helpful to clarify claims that would answer the questions raised by the policy. They're often definitively answered by the allegations one way or the other because they have different issues that they're attending to. I would like to direct it towards attention to our alternative argument, which is at the web extent. I had a question about that. I have to tell you, I had a little trouble following your alternative argument. Which I think, and let me see if I've got this right, is that coverage section B, rather than the web extend endorsement, should control the outcome of this case? No, the original policy had trade risk coverage in subparagraph G, 14G, infringement of trade risks in your advertisement. That was the original policy. In addition to that policy, as part of the policy issue, they had a separate web extend endorsement. That web extend endorsement purported to replace coverage B, but that's all it said. It did not call attention to the fact that it would be eliminating, by virtue of that replacement, which was called a extend endorsement, coverage for trade threats. And the point is that under California law, that makes it unenforceable, as the most recent 28J letter we filed, which they elected not to respond to, Classic Distributing B, Beverage Group, Inc., it came down August 29th of 2012, suggests it cites two Ninth Circuit cases, both published, that basically say, if you do not tell people in the policy that you're eliminating coverage, then you haven't. And so they did not, at anywhere, said, well, we're replacing the old policy with coverage B. And then they should have said, by the way, here's what that means. You know that coverage you had for G infringement of trade risks? It is now gone, because you see the straight up coverage for trade risks. The first tender letter we wrote explained why there was advertising, which they also made a point about. And they had ample occasion to address this, your honor, because the court addressed the issue in its opinion. And they brought a motion for summary judgment, objectively, on the basis that there was no coverage at all under this coverage section G. And we opposed that. There's a case called Destination Ventures that says, Destination had noticed that the sufficiency of its claim will be an issue by virtue of its own motion for summary judgment and its submission of factual evidence outside the pleadings. That's a Ninth Circuit case published 46th, 53rd, 54th, 56th. So that's why they properly had before them the possibility that you could alternatively find that their web extended endorsement didn't apply. If you look back to our tender letter, we spent a great deal of time. Are you saying the web extended endorsement didn't apply, but coverage section B did? No, coverage B is a portion of the original policy, which included heading G. The web extended endorsement purported to eliminate all the coverage in B and replace it with the coverage in the web extend endorsement. And they did add specific coverage for web activity, which frankly was probably covered under the old advertising cover anyway. What they didn't mention is that if this is effective, the consequence of that is you will lose coverage for what had been in the prior policy, which you would assume is the basic policy you have coverage for. And so we think that that bait and switch was improper and is inconsistent with California Supreme Court authority for the reasons recently adopted by Judge Fees in the classic beverage case, also against travelers. And so, there the court's citing the Lexington insurer, the Devaney case from the Ninth Circuit, and Allstate v. Fibus, both published opinions, said, look, if you remove potentially covered claims, and don't tell people what you're removing, clearly, conspicuously, and plainly, that's problematic. And therefore, it doesn't remove that. We also cited, in our briefing, Premier Pat's decision of a district judge in Virginia that agreed with that analysis and found that any coverage that was available under the web extend, plus the underlying policy, should all be enforced. Now, they may argue that there's no evidence of in your advertisement, but if you look at our letter at 136 to 137 of the transcript, we have a heading. Known facts, evidence, a trade regiment was committed in MPP's advertisements. They never responded to that letter. They never said, we are taking issue with your trade dress coverage analysis. We do not see in your advertisement satisfied. They just pointed to the web extend endorsement and said, well, this handles everything. So they didn't take on the issue of whether or not the original coverage would apply if the web extend was unenforceable in any way. And so, they've objectively asked by summary judgment note for adjudication on that issue. And now, they've placed it before this court, and this court may properly go forward. But again, going back to why there is a plethora of evidence about the nexus to advertising, I'd urge the court to look at exhibit C and D, which is the interchange between the parties. C says, a press release is now being restributed. D says, MTD is to immediately cease and desist all efforts to produce, promote, advertise, or sell unauthorized copy of the design. So they acknowledge that we were out there promoting our quote unquote cheap synthetic knockoffs along with their own products. And they asked us to stop doing that because we were promoting and advertising it. It's a fact that the allegation of steering towards didn't have and sales people said things in the showroom attached to it until the amended complaint. But in context, looking at all the allegations, you get that we engaged paragraph 34, promoting and offering for sale knockoffs and imitations of plaintiff's established furniture denies. Paragraph 35, in promoting the synthetic knockoffs of plaintiff's designs using the Jennifer mark. What more do you need for a statement than what we put in our advertising about our ability to sell these products that led people to conclude that they were available for sale. I think that meets any applicable standard. The court, by the way, doesn't have to even follow Charlotte Ruth's finding that trade libel is not the sole meaning of the publication offense, the disparagement offense, because we think factually we can meet the elements of trade libel so long as you look at inferences in your innuendo, but we think in light of Charlotte Ruth's, you don't even have to go down that tunnel. You just have to look at degrading or denigrating statements. Indeed, the Nichols case, an early decision that they side and rely on, said a statement that is either ambiguous or susceptible of an innocent meeting may nonetheless be actionable under a theory of product disparagement. If the plaintiff pleads by innuendo, the facts showing the defamatory meaning of the statements. That's precisely what we contend was done here, and we believe that the facts are sufficient to that end. So my time is up, but to sum up, Your Honor, I think you can, Charlotte Bruce is really the key authority. They have argued vehemently that there's no statement in Charlotte Bruce, all there is is a tag on a product. Well, the court found that sufficient under its analytic standard. This court is bound by that decision, and I think this court should also reach the alternative issue to assure that these policies are fairly explained to the public so they are not deprived of the understanding of what coverage is available by virtue of this endorsement. Which we think makes dramatic changes that indeed let us initially to look just at the coverage G to see if there'd be coverage there. Thank you. Your Honor's counsel denies that there's a conflict in the law on the Charlotte Bruce issue. In fact, there is. The case is cited at page 22 of the blue brief, all explain that the clause means trade libel. The Miranda case, which counsel submitted in a 28-J letter, says the same thing. So there is a conflict on that issue. But I do agree with counsel, the court need not get there. The court can simply look at the policy. In Charlotte Bruce, there was a disparaging publication. In our case, there's no disparaging publication. Counsel says, well, it's reasonable to speculate or assume that the salespeople would make statements when they're steering customers to the knockoff goods. That is speculation. That is the quintessential speculation. They may have made statements. The plaintiff didn't allege that until 18 months later. Then she said, yes, here's what they said. That was when the disparagement facts were alleged. In every case Taylor cites, the plaintiff's complaint expressly alleged that the defendant made a disparaging statement. Sometimes it was disparagement by implication, because the plaintiff was not expressly mentioned in the statement. But in every case, there was a statement. Moreover, the speculation here is illogical. Think about this. The store is trying to sell their knockoffs by making them look like the plaintiff's furniture. Why would a salesman disparage the source design that it's trying to copy? Copying is flattering, not disparaging. But then doesn't that go into the whole bait and switch? And once you get them in, then you want them to look at yours. And so then maybe you make comments about the other? Your Honor, the key word in that sentence is maybe. Yes, maybe they make statements, maybe they don't. We can only speculate. And to determine the duty to defend, you have to look at the facts pleaded, look at the policy. You don't speculate about what the plaintiff may have in mind that they didn't put in the complaint, what they may amend, what they may allege later. You don't speculate. With respect to the alternative argument, a couple of quick points, these are in our briefs. They didn't raise it below. Their motion assumed the WebExtend endorsement was the operative provision in the policy. They argued duty to defend under the WebExtend endorsement. Their motion didn't even provide the court with the body, the section B that counsel's talking about. They didn't put that before the court because that wasn't their argument. And finally, even if you look at the body of the policy, it covers disparagement in an advertisement. Rose Quist did not allege disparagement from any advertisement. She alleged a disparaging sale on the showroom floor. The policy does not cover disparaging sales, only disparaging statements. Thank you. Okay, thank you. That concludes the argument. Thank you, the case is submitted. Appreciate the arguments. We are in recess. Thank you very much.
judges: Fletcher, Hawkins, Murguia